IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| LISA LYNETTE STALLINGS, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL NO. 6:18-CV-00006 |
| § | |
| NANCY A. BERRYHILL, § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

This is a civil action seeking judicial review of an administrative decision of Social Security benefits. The Court is in receipt of Plaintiff Lisa Lynette Stallings' ("Stallings") Complaint, Dkt. No. 1; Original Brief and Incorporated Memorandum in Support of Motion for Summary Judgment, Dkt. No. 11; Motion for Summary Judgment, Dkt. No. 12 and her Reply Brief, Dkt. No. 18. The Court is in receipt of Defendant Commissioner of the Social Security Administration, ("Commissioner") Answer to the Complaint, Dkt. No. 6, and Cross Motion for Summary Judgment, Dkt. No. 15. The Court is also in receipt of the Administrative Transcript/Record, Dkt. No. 7.

I. **Background**

Stallings seeks judicial review of a final administrative decision of the Commissioner of the Social Security Administration ("SSA") pursuant to 42 U.S.C. § 405(g).

Stallings filed an application June 19, 2014 with the Social Security Administration applying for Social Security Disability Insurance under Title II of the Social Security Act and for Supplemental Security Income benefits under Title XVI of the same act. Tr. 162, 221. Both applications claimed Stallings became disabled on February 11, 2014. *Id.* She claimed she is disabled due to carpal tunnel, arthritis, depression, anxiety, bursitis, foot pain, hearing loss, knee pain and spine

issues. Tr. 357. At the time of her alleged disability occurrence, Stallings was 44 years old with a tenth grade education level. Tr. 233, 358.

Stallings' application was denied on October 8, 2014 and then again in reconsideration on February 4, 2015. Tr. 221. Administrative Law Judge ("ALJ") Gary J. Suttles held a hearing in the case on May 20, 2016. Tr. 100. In a decision dated June 21, 2016 (incorrectly stamped June 21, 2015) the Administrative Law Judge denied Stallings' application, finding she could perform some light jobs in the national economy. Tr. 234-35. After submitting additional evidence, Stallings appealed to the Appeals Council ("AC") and had her appeal denied on September 25, 2017. Tr. 1-3 The AC found that there was not a reasonable probability that the additional evidence would change the outcome of the decision. *Id.* Stallings filed this case before this Court and incorporated all documentation into the transcript. Dkt. No. 11 at 3.

### a. Hearing

At the hearing, the ALJ inquired for an hour and twenty minutes into the nature of Stallings' claims. A Vocational Expert also appeared and testified. Tr. 100. Most of the issues discussed at the hearing were noted in the ALJ's decision but the Court will take note of several points of dispute regarding the ALJ's inquiry and Stalling's submission of evidence:

### i. Outstanding Records

At the beginning of the hearing the ALJ inquired into the completeness of the medical records. Tr. 102-03. The representative for Stallings informed the ALJ that there were outstanding records. *Id.* The ALJ gave Stallings two weeks to complete the record. *Id.*

### ii. Medical commentary

During the hearing the ALJ opined on the quality of the medical advice Stallings had received:

> ALJ: What would contradict the MRI results?
> ATTY: No. The MRI results say severe spinal stenosis, Your Honor, and as you know with the listings, severe spinal stenosis -- our argument actually is it meets listing level due to the severity of the --

> ALJ: Not the – well, you're totally wrong, Counsel. Everybody has severe stenosis of some degree.
> ATTY: Everybody has severe stenosis?
> ALJ: And just because you have severe stenosis, that gets you step – that gets you to step two in the evaluation process. You got a severe impairment. Okay. I'll grant it. She's got a severe back impairment. That's about all that gets you. Okay? That doesn't meet your listing at all. I don't know where you get a listing from out of that, but if you look at what the MRI actually says, it doesn't indicate there's any impingement on the nerve root nor is there any herniation. This says minimal degenerative changes. A protrusion.
> ATTY: Several, yes, and narrowing of the spine. Yes. I see. I read it, Your Honor.
> ALJ: Okay. Wonderful. All I'm saying, ma'am, is with that kind of result if you let anybody touch you without getting a second opinion, I would consider that doctor to be on the verge of malpractice, the one that recommends surgery with this MRI. That's all I'm telling you. You do what you want.

Tr. 120-123.

### b. Late Medical Records

The ALJ and a representative for Stallings agreed at the hearing on May 20, 2016 to keep the record open for two weeks for Stallings to submit additional medical records. Tr. 102-103. Two weeks after the hearing Stallings' attorneys filed a post hearing memorandum challenging the findings at the hearing. Tr. 311-31. The memorandum did not provide and did not mention the outstanding medical records. *Id.* The ALJ issued his written decision on June 21, 2016, one month after the hearing. Tr. 218. The additional records were eventually added to Stallings record and considered by the Appeals Council during its review. Tr. 2.

### c. Decision

In his June 21, 2016 decision the ALJ concluded Stallings was not disabled within the meaning of the Social Security Act. Tr. 221 In a 15-page decision the ALJ reviewed the five-step process required by statute to render his decision. Tr. 222. The ALJ held that the claimant met the insured status requirements required by the Social Security Act; that Stallings had not engaged in substantial gainful activity since February 11, 2014; and that Stallings had severe impairments of osteoarthritis of the feet, legs and back, obesity, depression, and anxiety. Tr. 224.

The ALJ concluded the impairments of hearing loss and carpal tunnel were not severe under the regulations. Tr. 224. The ALJ held that Stallings did not have a combination of impairments that meets one of the proscribed categories of impairments under "20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." Tr. 224. This holding was supported by a finding that Stallings did not have an inability to ambulate or inability to perform fine and gross movements effectively that would support such categories. Tr. 224-25.

The ALJ considered each impairment in turn and provided the legal framework which guided his decision. Tr. 224-26. Specifically, the ALJ found "the records do not document any neurological defects, significant musculoskeletal abnormalities, or any serious dysfunctioning of the bodily organs that would preclude a level of work as delineated in this decision." Tr. 225. In the final step, the ALJ held: "After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), lifting a maximum of 20 pounds and frequently 10 pounds. She can stand and walk 4 to 8 hours each and sit 6 to 8 hours for a full 8-hour day." Tr. 227. The decision went on to note specific physical abilities the ALJ determined Stallings to be capable of. In support of those conclusions the ALJ outlined the legal framework he employed and how the medical records fit into that framework. Tr. 227-28. "After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 228. The ALJ then listed relevant medical events from the medical record. Tr. 228-32. The ALJ weighed the opinions of examining and treating doctors. Tr. 232. The ALJ gave "great weight" to opinions he thought were consistent with the evidence and "little weight" to those opinions he thought were inconsistent with the medical records. Tr. 230-33 The opinions of doctors Jeanine Kwun ("Kwun"), Patty

Rowley ("Rowley"), Susan Thompson ("Thompson"), Arun Jain ("Jain") and Narvin Curtis ("Curtis") were given great weight, Tr. 232, while the opinions of Doctor Followwill ("Followwill") and treating physician Neil Campbell ("Campbell") were given little weight. Tr. 232-33 Doctor Raul Capitaine's ("Capitaine") assessment was given moderate weight. Tr. 232-33. The ALJ held that considering the age, education, work experience and functional capacity of Stallings, there are jobs that exist in significant numbers in the national economy that she can perform. Tr. 234. Based on the testimony of the vocational expert, the ALJ stated those jobs include mailroom clerk (non-postal), price marker, and electronics worker. Tr. 234. The ALJ denied both claims for disability insurance benefits and supplemental security income. Tr. 235. The ALJ did not consider the objections raised by Stalling's representative in the post-hearing memorandum on the grounds that they were moot because the objections addressed a vocational expert who did not testify at the hearing. Tr. 221.

## II. Arguments

Stallings moved for summary judgment arguing she is entitled to Social Security benefits as a matter of law or that the case should be remanded for further consideration. Dkt. Nos. 11, 12. Her motion presents two general issues: 1) the ALJ decision did not comply with the substantial evidence standard or the proper procedural standard and the ALJ dismissed or ignored portions of claimants medical records favorable to a finding of disability and did not compare the medical facts to the listings rendering an opinion so devoid of reference that it did not satisfy the holding of *Audler v. Astrue*, 501 F. 3d. 466 (5th Cir. 2007). 2) Under 20 C.F.R. § 404.970(b), the new evidence supplied to the Appeals Council is reviewable by this Court under Fifth Circuit jurisprudence; further, the ALJ's disability determination is not supported by substantial evidence because the ALJ failed to develop the record fully before issuing a decision. Dkt. No. 11 at 2.

The Commissioner made a cross motion for summary judgment. Dkt. No. 15. The Commissioner argues the ALJ's decision is supported by substantial evidence as shown by a decision that made a thorough review of the facts. *Id*. The

Commissioner also argues the ALJ complied with all governing legal authorities and reviewed the whole record before him. *Id.* at 5. Further, the Commissioner argues the ALJ properly developed the record and that the additional evidence submitted by Stallings does not provide reason to change the decision. *Id.* at 18.

The parties generally agree that this Court's review concerns whether substantial evidence supports the ALJ's decision and whether the proper legal standard was used in evaluating the evidence. Dkt. Nos. 15-1 at 1, 18 at 1.

### a. Weight of reviewing physicians

Stallings argues the ALJ put too much weight on the outdated opinions of medical reviewers who never met the claimant and did not give credible explanation for a limited weight given to examining doctors and treating doctors. Dkt. No. 11 at 6. Stallings cites *Audler v. Astrue* to support her position. *Id.*; *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Stallings returns to this argument later in her motion and cites *Kneeland v. Berryhill* for the proposition that failure to address or even mention treating physicians can lead to an ALJ decision that is not substantially supported by the evidence. Dkt. No. 11 at 10; *Kneeland v. Berryhill*, 850 F.3d 749, 759 (5th Cir. 2017). Stallings argues the ALJ played doctor in the hearing and failed to meaningfully take into account the surgical advisory of a treating physician. Dkt. No. 11 at 10-11.

The Commissioner counters that state medical consultants are highly qualified physicians and can be given the weight of expert medical opinions. Dkt. No. 15-1 at 6. The Commissioner argues that the ALJ gave weight to the doctors' opinions based on the evidence in the record. *Id.* Additionally, the Commissioner argues the medical records that the ALJ reviewed which were dated after the opinions of the State agency medical consultants indicate Stallings impairments were "essentially the same as noted at the time that these reviewing physicians reviewed the records." *Id.* Finally, the Commissioner argues the ALJ did not rely solely on the state medical consultants and instead gave significant weight to the 2014 opinion of treating doctor Campbell, the 2015 consultative examination by Jain and the opinion of Capitaine. Dkt. No. 15-1 at 7.

### b. Analysis of medical records

Stallings argues the ALJ conducted a selective review of the record. Dkt. No. 6. She lists a series of medical concerns that Stallings believes were not given sufficient consideration under the appropriate legal framework. *Id.* at 7. Stallings argues some conditions were not addressed at all. *Id.* Her argument focuses on medical evidence of claimant's back issues that she argues was not considered. *Id.* at 8. "[E]ven though the ALJ stated he would assign spinal stenosis as a severe impairment, it did not appear listed as one in his decision; osteoarthritis of the spine is not the same condition as spinal stenosis." *Id.* Citing *Frank v. Barnhart*, Stallings argues that remand is the only remedy because the correct legal analysis was not applied to the back issues and the ALJ "refused to hear any analysis and did not perform one." *Id.* at 9; *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003). Stallings also argues that the mental health opinions were improperly analyzed and not given consideration under the appropriate listing. *Id.* She argues the ALJ gave inappropriate weight to his own understanding of Stallings' activities and not enough weight to the medical opinions. *Id.* at 10. Specifically, she states that the ALJ did not address Listing 1.02 and did not sufficiently analyze Listing 1.04, 12.04 and 12.06. *Id.* In support of these arguments Stallings cites *Audler* and *Kneeland*. *Id. Audler*, 501 F.3d at 448; *Kneeland*, 850 F.3d at 759.

In the response and cross motion, the Commissioner argues that Stallings mischaracterizes the ALJ's decision. Dkt. No. 15-1 at 7. The Commissioner argues that the ALJ is not required to discuss every piece of evidence and there will always be some evidence that is not addressed in such a voluminous record. *Id.* The Commissioner argues the substantial evidence on the record supports the ALJ's decision. *Id.* The Commissioner argues the ALJ considered all relevant impairments and to the extent the ALJ did not consider listed impairments, the Commissioner argues that such error is harmless because claimant does not demonstrate she met all the criteria for the listed impairments. *Id.* The Commissioner argues the ALJ found at least one of Plaintiff's impairments to be severe and proceeded to the final

step of the analysis, making a failure to find a particular impairment severe not reversible error. *Id.* at 13.

### c. Late records

Stallings argues the ALJ did not satisfy his duty to develop facts fully and fairly. Dkt. No. 11 at 11. She notes that while it is usually the Plaintiff's responsibility to furnish the medical records, "this case is exceptional and late submissions should not be held against the Plaintiff." *Id.* Stallings notes that the ALJ did not offer to issue a subpoena to compel the issuance of the records. *Id.* In support of her argument she cites *Ripley v. Chater* and *Brock v. Chater*. *Id.*; *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). Stallings also argues additional records may be examined by a reviewing court to see if there is a reasonable probability the records could change the ALJ's mind about a disability determination. Dkt. No. 11 at 12. Stallings argues the ALJ was required to provide a weight and good reasons for the treating source opinions in the records submitted after his decision. *Id.*

The Commissioner agrees that the ALJ has a duty to fully and fairly develop the facts relative to a claim for disability. Dkt. No. 15-1 at 18. The Commissioner argues Stallings missed the deadline set by the ALJ to submit the records and the ultimate burden to provide evidence rests with the claimant. *Id.* at 19. Further, the Commissioner argues that even if the ALJ was required to request further documentation any error would be harmless because she has not shown prejudice from the error. *Id.* The Commissioner argues the newly submitted evidence is consistent with the evidence already in the record. *Id.* at 21. The Commissioner also argues that Stallings failed to adequately request relief with citation to authorities, statutes, and parts of the record and so has waived the issue. *Id.* The Commissioner supports these arguments with citation to numerous cases including *Sun v. Colvin*, *Castillo v. Barnhart* and *Weaver v. Puckett*. *Id.*; *Sun v. Colvin*, 793 F.3d 502 (5th Cir. 2015); *Castillo v. Barnhart*, 325 F.3d 550 (5th Cir. 2003); *Weaver v. Puckett*, 896 F.2d 126 (5th Cir. 1990).

### III. Legal Standards

#### a. Standard of Review

The standard for judicial review is the same for claims of disability insurance and supplemental security income benefits. *Myers v. Barnhart*, 285 F. Supp. 2d 851, 858 (S.D. Tex. 2002); *compare* 42 U.S.C. § 405(g) *with* 42 U.S.C. § 1383(c)(3). Judicial review of the Commissioner's decision to deny benefits is limited to two inquires: (1) whether the Commissioner used the proper legal standards to evaluate the evidence and (2) whether the decision is supported by substantial evidence. *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002); 42 U.S.C. § 405(g). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). " 'It is more than a mere scintilla and less than a preponderance.' " *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000)). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez v. Chater,* 64 F.3d 172, 173 (5th Cir. 1995) (*per curiam*) (citations omitted). If, on the other hand, the Commissioner's findings are not supported by substantial evidence, or the Commissioner incorrectly applied the law, the reviewing court may, *inter alia,* reverse the Commissioner's decision and remand the case for further proceedings. *Murkeldove v. Astrue,* 635 F.3d 784, 792 (5th Cir. 2011) (discussing a remand pursuant to sentence four of 42 U.S.C. § 405(g)).

In determining whether substantial evidence of disability is present, the court "weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Perez v. Barnhart,* 415 F.3d 457, 462 (5th Cir. 2005) (citing *Wren v. Sullivan,* 925 F.2d 123, 126 (5th Cir. 1991)). The court must scrutinize the entire record to determine whether such evidence is present, but it may not reweigh the evidence, try the issues *de novo,* or substitute

its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Myers v. Apfel,* 238 F.3d 617, 619 (5th Cir. 2001) (*per curiam*); *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000).

### b. Standard for Entitlement to Social Security Benefits and Burden of Proof

An individual applying for benefits bears the initial burden of proving that he or she suffers from a disability, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Perez,* 415 F.3d at 461 (citations omitted). "Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit." *Newton,* 209 F.3d at 452-53 (citing 20 C.F.R. § 404.1572(a)–(b)).

In evaluating a disability claim, the Commissioner is required to conduct a five-step sequential analysis to determine "(1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his [or her] old job); and (5) whether the impairment prevents the claimant from doing any other work." *Perez,* 415 F.3d at 461 (citations omitted). The claimant bears the burden of showing that she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform. *Audler,* 501 F.3d at 448. "Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding." *Perez,* 415 F.3d at 461.

If, at any step, the Commissioner can determine that the claimant is disabled or not disabled, that ends the analysis. *Lovelace v. Bowen,* 813 F.2d 55, 58 (5th Cir. 1987). If, however, the Commissioner cannot make such a finding, the

analysis proceeds to the next step. *Perez,* 415 F.3d at 461. Before considering the fourth and fifth steps, the Commissioner must assess the claimant's residual functional capacity ("RFC"), which is, in layman's terms, her maximum work capability. *Id.* at 461-62; 20 C.F.R. §§ 404.1520(e), 404.1545(a). "The claimant's RFC is used at both steps four and five of the sequential analysis: at the fourth step to determine if the claimant can still do his [or her] past relevant work, and at the fifth step to determine whether the claimant can adjust to any other type of work." *Perez,* 415 F.3d at 462 (citing § 404.1520(e)). Finally, even if a court finds legal error in the ALJ's legal application it must apply harmless error analysis to determine if the error unfairly prejudiced the claimant. *Frank*, 326 F.3d at 621-22.

### c. Development of the record

An administrative law judge has a duty to fully and fairly develop the facts relative to a claim for disability benefits. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). If the ALJ does not satisfy their duty, the decision may not be substantially justified. *Ripley*, 67 F.3d at 557. But reversal is only justified with a showing of prejudice that might have altered the result. *Id.* The Fifth Circuit has held that the duty to develop the record does not include a duty to obtain all of a claimant's medical records before reaching a decision. *Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2015). "This court has described the ALJ's duty as one of developing 'all relevant facts,' not collecting all existing records." *Id.* The focus is on the extent of the questioning and whether the ALJ inquired into information necessary to make their decision. *Id.*; *see e.g., Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (holding a single question into a medical issue during a five minute hearing insufficient to meet the duty); *Castillo v. Barnhart*, 325 F.3d 550, 553 (5th Cir. 2003) (finding sufficient questioning into the claimants age, education, and medical history).

A reviewing court may consider the evidence incorporated in the record after the ALJ makes his decision but before the Commissioner's decision is final. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("It follows that the record before the Appeals Council constitutes part of the record upon which the

final decision is based."). The reviewing court may remand if, after review, it finds the records are so substantial as to potentially change the outcome of the ALJ's decision. *Whitehead v. Colvin*, 820 F.3d 776, 780 (5th Cir. 2016).

## IV. Analysis

### a. Weight of reviewing physicians

Treating physician opinions are generally entitled to significant weight. *Kneeland*, 850 F.3d at 760. The regulations require that examining physician's opinions must be considered. *Id.*; *see* 20 C.F.R. § 404.1527(c)(1). If there is no reliable medical evidence from a treating or examining physician controverting the claimant's treating doctor, the ALJ may only reject the opinion of a treating physician if the ALJ performs a detailed analysis of the treating physicians' views under 20 C.F.R. § 404.1527(d)(2). *Id.* The ALJ has sole responsibility for determining the claimant's disability status and is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Newton*, 209 F.3d at 455. "[W]hen good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony." *Perez*, 415 F.3d at 466. Good cause exceptions include "disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994)

Despite Stallings contentions, this is not a circumstance where the ALJ failed to account for the opinion of treating or examining physicians. Dkt. Nos. 11, 18; *see Audler*, 501 F.3d at 448. The ALJ noted and gave varying degrees of weight to the opinions of examining doctors. Tr. 229-31. Indeed, the ALJ had numerous opinions of treating, examining and reviewing doctors to weigh in making his decision. The ALJ stated the doctors' opinions, the opinion's relation to the evidence of record and the weight he gave the opinion. Tr. 229-331. Regarding treating doctor Campbell, the ALJ noted his 2014 follow up appointment finding healing in the Achilles repair and ordering physical therapy. Tr. 229. The ALJ later noted Dr. Campbell's finding in 2014 that Stallings could work part time. Tr. 233, 765. He gave the opinion little

weight because the opinions "are not consistent with the treating records, other records in the file as described above, and are not consistent with what the claimant stated she is able to do." Tr. 233. The medical records included ample evidence from other doctors about Stallings' strength, which contradict the conclusory opinion from Dr. Campbell (in the form of a checked box on a chart) recommending part time work and the number of hours Stallings could stand per day. Tr. 765. In the hearing and decision, the ALJ noted, analyzed, and weighed the opinions of treating doctors Campbell and Smith; examining doctors Jain, Followwill, and Capitaine; and evaluating doctors Kwun, and Rowland, Curtis, and Susan Thompson. Tr. 221-31, 822.

Here, the ALJ cited medical evidence from examining or treating doctors that contradicted parts of the opinions of treating Doctor Campbell and he weighted the doctor's opinions accordingly. Tr. 221-31; *see Kneeland*, 850 F.3d at 760. Therefore, no detailed analysis under 20 C.F.R. § 404.1527(d)(2) was required. *See id.* This Court will not reweigh the evidence or the ALJ's weighting of the opinions of the various doctors. *See id; Myers v. Apfel,* 238 F.3d at 619. Stallings only partially quotes the language in *Newton* regarding the rejection of a treating physician's opinion. Dkt. No. 18 at 7. The rest of the quotation provides that other evidence from a treating or examining physician may be used to reject another treating physician's opinion. *Newton*, 209 F.3d at 453. Stallings cites *Kneeland* and *Audler* in support of her position, but both cases concern the total disregard of a medical opinion which is not the case here. *See Audler*, 501 F.3d at 448; *Kneeland*, 850 F.3d at 759. Accordingly, the Court rejects Stallings contention that error occurred in the weighing of the doctor's opinions.

### b. Analysis of medical records

As stated above in determining whether substantial evidence of disability is present, the court "weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Perez,* 415 F.3d at 462. The court must scrutinize the entire record to determine whether such evidence is present,

but it may not reweigh the evidence, try the issues *de novo,* or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Myers,* 238 F.3d at 619; *Newton,* 209 F.3d at 452.

Error can occur when an ALJ fails to identify a listing for which there is evidence or fails to explain how they reached a conclusion that the evidence is insufficient to reach such a listing. *Audler*, 501 F.3d at 448. Yet, the claimant must show harm from the error by showing that they appeared to meet the listing. *Id.* Procedural perfection in administrative proceedings is not required. *Id.*

Although the ALJ stated he made a "careful consideration of all the evidence," this Court still conducts its review to see if in fact the decision is based on substantial evidence from the entire record. *See Myers,* 238 F.3d at 619. Stallings contends the ALJ failed to consider several listed impairments, the Court will consider each of these in turn.

### i. Listing 1.02

Stallings argues that Listing 1.02, Major Dysfunction of a Joint, should have been considered by the ALJ because of evidence of such a listing. Dkt. No. 11 at 7. In her reply, Stallings indicates that an MRI documented severe damage to her right foot requiring surgery on November 1, 2013. Dkt. No. 18 at 6. She argues she had surgery on her foot February 11, 2014 and then was prescribed physical therapy September 8, 2014 when she saw Dr. Campbell. *Id.* at 6.

Listing 1.02 requires:

> 101.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 101.00B2c.

20 C.F.R. § Pt. 404, Subpt. P, App. 1

Such a showing must be made for at least 12 months. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The medical evidence Stallings cites runs from November 1, 2013 to September 8, 2014, which is not a one year period. The next medical record she cites comes from Jain eleven months after the surgery where Jain finds she is "ambulating normally" and includes a range of motion chart for Stallings' ankle. Dkt. No. 18 at 6; Tr. 599-610. The exam found no ankle swelling and 5/5 strength in the upper and lower extremities. Tr. 601. Even the September 8, 2014 exam by Dr. Campbell Stallings cites makes no finding regarding ambulation or inability to perform gross movements, as needed to meet 1.02, and relates only patient concerns of tenderness on her ankle. Tr. 720-722.

Because Stallings has not made a showing that she suffered from a listing for a 12-month period the Court finds that any ALJ error in failing to note listing 1.02 is harmless. *See Audler*, 501 F.3d at 448

### ii. Listing 1.04

Stallings makes a similar argument regarding Listing 1.04, Disorders of the spine. Stallings argues the listing was not named or methodically analyzed and that the ALJ played doctor and was inappropriately dismissive of a 2015 MRI and surgical recommendation. Dkt. No. 11 at 7. The Commissioner argues the ALJ discussed the elements of the listing even if he did not state it by name and any error on his part is harmless. Dkt. No 15-1 at 10. The Commissioner also argues that Stallings has not made a showing that she qualifies for the listing.

Listing 1.04 requires:

> 101.04 Disorders of the spine (e.g., lysosomal disorders, metabolic disorders, vertebral osteomyelitis, vertebral fracture, achondroplasia) resulting in compromise of a nerve root (including the cauda equina) or the spinal cord, with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

As the Commissioner points out, although the ALJ did not state the name of the listing in his decision, the ALJ did cite evidence in the record that demonstrates Stallings does not qualify for Listing 1.04. *See* Dkt. No. 15-1 at 10. This includes findings: regarding the normal range of motion of the lumbar spine and normal findings of the musculoskeletal system, Tr. 229, 230, 563, 840-41; a finding of normal motor strength and no motor disturbances, Tr. 228-30, 566-67, 600-01, 822, 1131, 1190; and normal sensation and reflexes. Tr. 229-30, 600-01, 822, 1131, 1190.

ALJs must "be careful not to succumb to the temptation to play doctor." *Frank*, 326 F.3d at 622. The ALJ should not draw his own medical conclusions from the medical data without relying on the expert's help. *Id*. If the ALJ substitutes his medical judgment and bases his decision primarily on that substitution, error occurs. *Id*. Yet these errors of judgment are also subject to harmless error analysis. *Id*.

Stallings' challenge of the ALJ's consideration of the 2015 MRI and Dr. Smith's surgery recommendation is well taken. *See* Dkt. No. 18 at 9. His inquiry into the MRI involved personal opinion and personal interpretation of medical data. *See* Tr. 122-23. When the ALJ said "All I'm saying, ma'am, is with that kind of result if you let anybody touch you without getting a second opinion, I would consider that doctor to be on the verge of malpractice," he crossed from inquiry to dispensing personal opinion. Tr. 120-123. The same can be said for his opinion: "ALJ: Not the – well, you're totally wrong, Counsel. Everybody has severe stenosis of some degree." Tr. 122.

After noting this error, the Court still must do a harmless error analysis. *See Frank*, 326 F.3d at 622. Here, Stallings has not shown in the record a 12-month period during which she qualified for the 1.04 listing. *See* Dkt. Nos. 11, 18. She has not shown how the inappropriate remark affects the evidence the ALJ did cite in the record and which was the basis for his decision. *Id*. Stallings puts too great an emphasis on the MRI and opinion of Smith to offer surgery. Tr. 822. Even if the ALJ had considered the MRI and Smith's opinion in her favor it would not establish a 12 month period during which she met the 1.04 listing or overcome the other medical

opinions in the record that the ALJ relied on for his decision that touched on the 1.04 listing. Tr. 228-30, 566-67, 600-01, 822, 1131, 1190; *See Frank*, 326 F.3d at 622.

For the foregoing reasons, the Court concludes that any ALJ error related to failing to note Listing 1.04 is harmless. *See Audler*, 501 F.3d at 448-49.

### iii. Mental Health Evaluation Listings 12.04 and 12.06

Stallings claims the ALJ failed to address Listing 12.04, Affective Disorders, and Listing 12.06, Anxiety Disorders. Dkt. No. 11 at 9. Stallings contends that although the ALJ mentions these listings, he used his own understanding and opinions regarding her activities to find them not applicable. *Id.* Stallings argues that notes such as, "She is fairly limited in performing her activities at home due to her ongoing pain," were ignored. Dkt. No. 11 at 10.

The Commissioner argues that the ALJ used the totality of the mental health evaluations to make his decisions. Dkt. No. 15-1 at 15. The Commissioner argues the ALJ used the evaluations of Capitaine, Curtis, and Thompson to find that Stallings had mild limitations in her daily activities. *Id.*

The ALJ accounted for the mental health evaluations in his decision, weighed the opinions of the doctors and reached a conclusion that took them into account and found mild limitations for Stallings. *See* Tr. 168, 180, 226, 231. This Court will not reweigh the evidence that the ALJ has considered. *See Myers,* 238 F.3d at 619.

The Court finds there is substantial evidence for the ALJ's mental health decision, and the correct legal framework was applied.

### c. Late records

An administrative law judge has a duty to fully and fairly develop the facts relative to a claim for disability benefits. *Carey*, 230 F.3d at 142. If the ALJ does not satisfy his duty, the decision may not be substantially justified. *Ripley*, 67 F.3d at 557. The Fifth Circuit has held that the duty to develop the record does not include a duty to obtain all of a claimant's medical records before reaching a decision: "This court has described the ALJ's duty as one of developing 'all relevant facts,' not collecting all existing records." *Sun*, 793 F.3d at 509.

As noted above, Stallings clearly missed the deadline the ALJ set for the submission of outstanding medical records. Tr. 102-103. During the hearing the ALJ inquired into relevant facts as required by his duty to develop the record. Tr. 100; *see Sun*, 793 F.3d at 509. Even when she contacted the ALJ later Stallings did not mention the outstanding documents. Tr. 311-31. The ALJ issued his decision a several weeks after the deadline to submit outstanding medical records had passed. Tr. 235. The Court finds that the ALJ's duty to fully and fairly develop the record was satisfied.

Once a record is supplemented, a reviewing court may consider the evidence incorporated in the record after the ALJ makes his decision but before the Commissioner's decision is final. *Higginbotham*, 405 F.3d at 337 ("It follows that the record before the Appeals Council constitutes part of the record upon which the final decision is based."). It is not appropriate for a reviewing court to consider evidence of a deterioration of condition dated after the ALJ rendered his decision. *Hamilton-Provost v. Colvin*, 605 F. App'x 233, 238 (5th Cir. 2015).

Stallings cites to the additional records as evidence of a worse spine condition than the ALJ considered. Dkt. No. 11 at 13.

After a thorough examination of the additional records the Court finds the additional records are either outside the period at issue or generally consistent with evidence already in the record regarding Stallings' spinal and mental health problems and not so significant as to require remand. *See* Tr. 7-99; *Whitehead v. Colvin*, 820 F.3d 776, 780 (5th Cir. 2016); *Hamilton-Provost*, 605 F. App'x at 238.

V. **Conclusion**

After a review of the entire record and pursuant to the discussion above the Court finds the ALJ's decision is supported by substantial evidence, and the correct legal standard was applied. *See Masterson,* 309 F.3d at 272. As discussed above, the Court finds possible errors by the ALJ raised by Stallings were harmless to the decision.

For the foregoing reasons the Court hereby:

- **AFFIRMS** the Commissioner's final decision;
- **DENIES** Plaintiff's Motion for Summary Judgment, Dkt. Nos. 11, 12;
- **GRANTS** Defendant's Cross Motion for Summary Judgment, Dkt. No. 15.

The Court will direct entry of final judgment separately.

SIGNED this 30th day of October, 2019.

Hilda Tagle
Senior United States District Judge